## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN
## MADISON DIVISON

| | |
|---|---|
| LISA CLAY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) Case No.  3:17-cv-307 ) ) ) <u>CLASS ACTION</u> |
| Plaintiff, | ) ) CLASS ACTION COMPLAINT FOR ) DAMAGES |
| vs. | ) ) <u>DEMAND FOR JURY TRIAL</u> |
| COLONY BRANDS, INC., | ) ) |
| Defendant. | ) ) ) |

Plaintiff, Lisa Clay (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, allege the following upon information and belief based upon personal knowledge:

### NATURE OF THE CASE

1.      The Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227, is a remedial statute enacted by Congress to protect consumers from unwanted autodialed/pre-recorded voice calls and faxes.  As is applicable here, Congress specifically recognized that the use of automated technology in calls to consumers was more intrusive and raised greater privacy concerns than calls using live representatives:

> It is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons. These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party, fill an answering machine tape or a voice recording service, and do not disconnect the line even after the customer hangs up the telephone. For all these reasons, it is legitimate and consistent with the Constitution to impose greater restriction on automated calls than on calls placed by "live" persons.

S. Rep. No. 102-178 (Oct. 8, 1991); *see also* Pub. L. No. 102-243, § 2(12) (1991), *codified at* 47 U.S.C. § 227 ("Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."). Such calls to cell phones were seen as particularly problematic. *See* S. Rep. No. 102-178 (Oct. 8, 1991) (noting that "unsolicited calls placed to … cellular … telephone numbers often impose a cost on the called party).

2.      Accordingly, the TCPA explicitly prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  The statute provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3).

3.      The TCPA also ensures that parties involved in causing illegal calls to be made are appropriately held accountable, whether they physically made the calls or not.  *See generally In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574 (2013) (finding that vicarious liability under federal common law agency principles is available for violations of the TCPA, including not only based on classical agency, but on other theories, as well, such as apparent authority or ratification); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565, para. 10 (2008) ("Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.").

4.      In this case, Defendant Colony Brands, Inc. (hereinafter, "Defendant")—a mail-order cheese company with affiliated retail and non-retail companies—has engaged in illegally calling consumers' cellular telephone numbers using an automatic telephone dialing system ("autodialer" or "ATDS") and/or artificial or prerecorded voice.  More simply put, without first obtaining prior express consent of the called party, Defendant has illegally called the cellular telephones of hundreds if not more individuals utilizing an ATDS and/or artificial or prerecorded voice.

5.      Consequently, Plaintiff brings this action for herself and others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendant in negligently, knowingly, and/or willfully contacting them on their telephones in violation of the TCPA.

## JURISDICTION & VENUE

6.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiff and the putative class see relief under a Federal statute, the TCPA, 47 U.S.C. § 227, et seq.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012).

7.      Venue is proper in the United States District Court for the Western District of Wisconsin pursuant to 18 U.S.C. § 1391(b) and 18 U.S.C. § 1441(a) because Defendant does business within the state of Wisconsin and maintains its corporate headquarters in the City of Monroe, County of Green, Wisconsin which is within this judicial district.

## PARTIES

8.      Plaintiff, Lisa Clay ("Plaintiff"), is a natural person residing in West Point, Mississippi, and is a "person" as defined by 47 U.S.C. § 153(10).

9.      Defendant Colony Brands, Inc. ("Defendant") is a business headquartered at 1112

7th Avenue, Monroe, Wisconsin 53566-1364, constituting a "person" as defined by 47 U.S.C. § 153(10).

## FACTUAL ALLEGATIONS

10.     Defendant maintains various online retail entities and offers consumers credit/financing accounts for said entities, such as Seventh Avenue, Midnight Velvet, Ginny's, The Tender Filet, Swiss Colony and various others.

11.     Within the four years prior to the filing of this action, Defendant initiated autodialed telephone calls to cellular telephones.  On information and belief, Defendant caused dialing equipment to be used to dial the cellular telephone numbers of alleged debtors and others, including Plaintiff.

12.     Such dialing equipment had the capacity to dial numbers without human intervention, and constituted an "automatic telephone dialing system" within the meaning of the TCPA.  *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14092, para. 132 (2003) ("*2003 FCC Ruling*") (acknowledging that an ATDS constitutes equipment with "the *capacity* to dial numbers without human intervention") (emphasis in original); *accord Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013).

13.     Unfortunately, many of the people whose cellular telephones were called as a result of Defendant's autodialing practices never actually consented to receive such calls, whether because Defendant acquired the individual's number through skip tracing or another indirect method,  is listed as a reference on an application or intake form or the individual obtained a "recycled" cellular telephone number which once belonged to a current or previous customer, the

4

number in Defendant's database attributable to the alleged debtor was incorrect, or any other number of reasons.

14.     On information and belief, including considering the experience of Plaintiff described below, many of these individuals were called more than once, and Defendant lacked a sufficiently adequate system for preventing autodialed calls to telephones for which they did not have prior express permission to call.

## FACTS RELATING TO LISA CLAY

15.     Defendant is a mail-order cheese company with affiliated retail and non-retail companies, including a subsidiary company called Seventh Avenue, Inc., which is a department store catalog company.

16.     Beginning in or around January of 2016, Defendant  contacted Plaintiff on her cellular telephone number ending in 9705, seeking to speak with an a different female individual and not Plaintiff in regards to an allegedly delinquent credit account associated with Defendant's Seventh Avenue online retail brand.

17.     On January 14, 2016, Plaintiff told Defendant that she was not the individual they were look for and requested Defendant to stop calling.

18.     Defendant has placed several collection calls a week to Plaintiff's cellular telephone seeking to speak with a person other than Plaintiff.  In sum, Defendant placed approximately twenty (23) such autodialed collection calls to Plaintiff's cellular telephone.

19.     On information and belief, Defendant used an ATDS to place these calls to Plaintiff, seeking to collect a debt allegedly owed by a third party, not Plaintiff.

20.     Defendant's use of an ATDS is evidenced by Defendant often placing calls at nearly the exact same time and on a somewhat routine amount of days of a week, thus evidencing that

the calls at issue were pre-planned or programmed to be placed at particular dates and times and/or at a particular frequency.  This ATDS has the capacity to store or produce telephone numbers, which, if utilized in such a fashion, can be used to dial numbers in a random or sequential fashion and be used in connection with a number generator.

21.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

22.     Defendant's calls were placed to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

23.     On numerous occasions Defendant contacted Plaintiff from telephone number (888) 224-5557.

24.     On several occasions, Plaintiff answered Defendant's telephone calls.  When a live person was reached, often after a pause or "dead air" (thus further evidencing Defendant's use of an ATDS), Plaintiff informed Defendant that it was contacting the incorrect person and instructed Defendant to stop contacting her.  Nonetheless, Defendant continued to place calls to Plaintiff's cellular telephone via Defendant's "automatic telephone dialing system" in an attempt to collect an outstanding debt allegedly owed by a third party.

25.     This "dead air" is commonplace with autodialing and/or predictive dialing equipment.  It indicates and evidences that the algorithm(s) being used by Defendant's and/or its agent's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated.  Thus resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without

human intervention, to Plaintiff.

26.     The dead air is essentially the autodialer holding the call it placed to Plaintiff until the next available human agent is ready to accept it.  Should the call at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

27.     Plaintiff is not the individual that Defendant is seeking to speak with.  Further, Plaintiff has had no business relationship with Defendant nor did Plaintiff ever provide Defendant with her cellular telephone number.  Thus, Defendant did not have Plaintiff's "prior express consent" to make calls to her cellular telephone using an automatic telephone dialing system.  *See* 47 U.S.C. § 227(b)(1)(A).  Even assuming arguendo that Defendant did have Plaintiff's "prior express consent", which it did not, Plaintiff subsequently revoked said consent by instructing Defendant to cease calling her.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of herself and all others similarly situated, as members of the proposed class (the "Class") defined as follows:

> All persons within the United States who, within the four years prior to the filing of the complaint in this action, through the date of certification, Defendant or its agent/s or employee/s caused to be made any telephone calls to said person's cellular telephone through the use of any automatic telephone dialing system, where such person had not previously consented to receiving such call.

29.     Plaintiff represents, and is a member of, the Class, having been called by Defendant on her cell phone through the use of an automatic telephone dialing system without her prior express consent.

30.     Plaintiff does not know the number of members in the Class, but believe the Class members number in the hundreds, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

31.     The Class is so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and hereon alleges, that the Class includes hundreds, if not thousands, of members. Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendant.

32.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and Class members via their cellular telephones, thereby causing Plaintiff and Class members to incur certain charges or reduced telephone time for which Plaintiff and Class members had previously paid by having to retrieve or administer messages left by Defendant during those illegal calls, occupying Plaintiff's and the Class members' phone thus precluding Plaintiff and the Class from otherwise enjoyment and use of their personal cellular telephones, and further invading the privacy of said Plaintiff and Class members.

33.     Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

a.    Whether, within the four years prior to the filing of this action, Defendant made any collection call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

b.    Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

c.    Whether Defendant should be enjoined from engaging in such conduct in the future.

34.    As a person who received calls from Defendant using an automatic telephone dialing system, without her prior express consent, Plaintiff is asserting claims that are typical of the Class.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

36.    A class action is superior to other available methods of fair and efficient adjudication of the controversy, since individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, it would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

37.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the this Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

38.    Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**
**(Against All Defendants)**

39.    Plaintiff realleges and incorporates the foregoing allegations as if set forth fully herein.

40.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

41.    "Automatic telephone dialing system" refers to any equipment that has "the *capacity* to dial numbers without human intervention." *See 2003 FCC Ruling*, 18 FCC Rcd. at 14092, para. 132.

42.    Defendant caused equipment having the capacity to dial numbers without human intervention to be used to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

43.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not

have prior express consent to call the cell phone of Plaintiff and the other members of the Class when the autodialed and/or artificial or prerecorded voice calls were made.

44.     As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 312(f)(1).

45.     Defendant has, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by causing an automatic telephone dialing system to be used to make non-emergency telephone calls to Plaintiff and the other members of the Class without their prior express permission.

46.     As a result of Defendant's conduct and pursuant to Section 227(b)(3)(B) of the TCPA, Plaintiff and the other members of the putative Class are each entitled to a minimum of $500.00 in damages for each violation.

47.     Because Defendant knew or should have known that Plaintiff and the other members of the Class had not given prior express consent to receive the calls to their cell phones and/or willfully used an automatic telephone dialing system to call the cell phones of Plaintiff and the other members of the Class without prior express permission, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Class pursuant to 47 U.S.C. § 227(b)(3).

48.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

WHEREFORE, Plaintiff, on behalf of herself and the other members of the Class, pray for the following relief against Defendant:

      a.     An order certifying the Class defined above, appointing Plaintiff as representatives of the Class, and appointing their attorneys as class counsel;

      b.      An injunction prohibiting Defendant from calling Plaintiff's and the other Class members' cell phone numbers using an automatic telephone dialing system;

      c.      An award of statutory damages; and

      d.      Such further and other relief the Court deems reasonable and just.

RESPECTFULLY SUBMITTED,

Dated: April 24, 2017           **AGRUSS LAW FIRM, LLC**

By: /s/ Michael S. Agruss
       Michael S. Agruss
       SBN: 6281600
       Agruss Law Firm, LLC
       4809 N. Ravenswood Ave.
       Suite 419
       Chicago, IL 60640
       Tel: 312-224-4695
       Fax: 312-253-4451
       michael@agrusslawfirm.com
       Attorneys for Plaintiff